IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **Case No. 19-cr-00243-PWG** |
| **RAPHAEL JASON NANA CHINJI** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Raphael Jason Nana Chinji's Appeal of Denial of Relief, construed as a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 120. Mr. Chinji is currently imprisoned at Federal Correctional Institute ("FCI") La Tuna. Def.'s Mot. Ex. 1, ECF No. 120-1; Gov't Resp. 5, ECF No. 126. He is serving a 46-month sentence for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). J., ECF No. 94. Mr. Chinji has been imprisoned in connection with this case since May 24, 2019, *id.* at 2, and was convicted on January 19, 2021, after pleading guilty, *id.* at 1. His projected release date is currently August 28, 2022. Gov't Resp. 5. In his motion, Mr. Chinji has asked for early release in light of his medical conditions, including latent tuberculosis, neutropenia, epistaxis, history of head injury, and paranoid personality disorder, that he contends make him more susceptible to complications if he were to contract COVID-19. Def.'s Mot. 1. I have reviewed all the materials[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons discussed below, Mr. Chinji's motion is DENIED.

---

[1] The motion is fully briefed. *See* ECF Nos. 120 ("Def.'s Mot."), 126 ("Gov't Resp."), and 130 ("Reply").

**BACKGROUND**

Between in or about April 2017 and in or about June 2017, Mr. Chinji knowingly conspired with co-conspirators Joel Tembeng Mukong ("Mukong"), Aldrin Fon Fomukong ("Fomukong"), Yanick Eyong ("Eyong"), Carlson Cho ("Cho"), and Izuo-Ere Digifa ("Digifa") to commit wire fraud in violation of 18 U.S.C. § 1956. Stip. Facts, Plea Agreement, ECF No. 70. Co-conspirators Fomukong, Cho, Eyong, and Digifa opened "drop accounts" in order to receive millions of dollars from victims of Business Email Compromise ("BEC") schemes. *Id.* Once money was received from victims in the drop accounts, the money would be rapidly disbursed by transferring money to other accounts using wires, withdrawing sums of money, writing checks to other individuals, or obtaining cashier's checks. *Id.*

Along with Mukong, Mr. Chinji recruited individuals to register fictitious businesses in the United States. *Id.* At the time, Mr. Chinji and Mukong lived in Houston, Texas. *Id.* at 1. Mr. Chinji would take the money deposited by victims in the drop accounts and obtain cashier's checks using these fictitious businesses in order to hide the true ownership and control of the assets. *Id.* at 2.

On May 13, 2019, Mr. Chinji was indicted on one count of conspiracy to commit money laundering under 18 U.S.C. § 1956(h) and was detained on May 24, 2019. Indictment, ECF No. 1. He pleaded guilty on October 6, 2020, Rearraignment, ECF No. 69, and was sentenced to 46 months in prison on January 19, 2021, J. 2. He was also ordered to pay restitution in the amount of $929,986. J. 5. His projected release date is August 28, 2022. Gov't Resp. Ex. 1, ECF No. 128.[2] Mr. Chinji filed this compassionate release motion based on the COVID-19 pandemic and the danger that infection poses for him due to his underlying medical conditions, including latent tuberculosis, neutropenia, epistaxis, history of head injury, and paranoid personality disorder.

---

[2]    All exhibits provided by the Government are filed under seal at ECF No. 128.

2

Def.'s Mot. 1; Gov't Resp. Ex. 3. Notwithstanding his concerns, however, Mr. Chinji has refused the COVID-19 vaccine. Gov't Resp. 5-6 (citing Ex. 4). He has also contracted COVID-19 four times, the last of which was asymptomatic. Gov't Resp. Ex. 4 at 140.

Mr. Chinji filed an administrative request for compassionate release with the warden of FCI La Tuna on December 28, 2021. Gov't Resp. Ex. 1. The warden denied this request on January 21, 2022. Gov't Resp. Ex. 2. The Government does not contest that Mr. Chinji has exhausted his administrative remedies. Gov't Resp. 13. It argues, however, that his history of asymptomatic COVID-19 demonstrates that he is not more susceptible to COVID-19 complications in the future regardless of his medical conditions. *See id.* at 14. Additionally, the Government reasons that Mr. Chinji's 46-month sentence is "sufficient but not greater than necessary" under the 18 U.S.C. § 3553(a) factors because he laundered close to one million dollars and created substantial financial hardship for his victims. *Id.* at 15.

## DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. High,* 997 F.3d 181, 185 (4th Cir. 2021). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here, Mr. Chinji requests a modification of his sentence for "compassionate release" under the First Step Act, as amended.[3] The First Step Act permits a defendant to petition a federal court directly after exhausting all administrative rights whenever "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, I must

---

[3] The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the BOP. In 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the Court to act on a motion for compassionate release filed by a defendant.

do the following: (1) determine whether the petitioner has fully exhausted all administrative remedies or 30 days have passed since the Bureau of Prisons ("BOP") received the request; (2) determine whether "extraordinary and compelling reasons" warrant a sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing Commission; and (3) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

I. **Administrative Exhaustion**

A court may only consider a prisoner's motion for compassionate release if the prisoner has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf" or if 30 days have passed since the warden of a defendant's facility received such a request. 18 U.S.C. § 3582(c)(1)(A). This condition is satisfied. *See* Gov't Resp. Ex. 2. As previously mentioned, the Government concedes that this motion is properly before this court. Gov't Resp. at 13.

II. **Extraordinary and Compelling Reasons**

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has found that there is no applicable policy statement that governs a defendant's motion for compassionate release. *High*, 997 F.3d at 186 (citing *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020)). Additionally, I join with the majority of courts in finding that 18 U.S.C. § 3582(c)(1)(A)(i), as amended, grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence, and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, Criminal No. ELH-18-72, 2020 WL

2614816, at *7-9 (D. Md. May 22, 2020) (holding the same and collecting cases). As the Fourth Circuit observed, district courts have discretion to independently assess whether circumstances meet the extraordinary and compelling threshold. *McCoy*, 981 F.3d at 281-82. More specifically, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citing *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). However, while not binding, the Sentencing Commission's policy statements may provide useful guidance. *Id.* at 279 (citing *United States v. Bryant*, Crim. No. 95-202-CCB-3, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020), *aff'd sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020)).

The Sentencing Commission's policy statements in U.S.S.G. § 1B1.13 offer guidance here.[4] Section 1B1.13 recites the language of 18 U.S.C. § 3582(c)(1)(A) before it was amended in 2018, including the statement that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G § 1B1.13(2). The commentary to the policy statement provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C); *see also McCoy*, 981 F.3d at 280-81.

Mr. Chinji states that his medical conditions put him at a higher risk of complications if he were to contract COVID-19. Def.'s Mot. at 1. These medical conditions include latent

---

[4] The Government asserts the § 1B1.13 criteria to argue Mr. Chinji does not present extraordinary and compelling reasons. Gov't Resp. 12. But as I have repeatedly held, and as the Fourth Circuit affirmed in *McCoy*, the § 1B1.13 categories are not binding in the compassionate release context. Specifically, the Government stresses the lack of BOP's determination that extraordinary and compelling reasons exist for Mr. Chinji. As the Fourth Circuit emphatically stated, such a determination is not required. *McCoy*, 981 F.3d at 284.

5

tuberculosis, neutropenia,[5] headaches, history of head injury, and epistaxis[6]. Gov't Resp. Ex. 4. He also cites statistics from August of 2020 indicating that the number of prisoners in American correctional facilities who have died from COVID-19 is greater than 1,000. Def's Mot. (citing *Deaths in American Facilities Surpass 1,000, as Cases Rise to 160,000*. TIMES ONLINE). At this time, there are ten cases of COVID-19 amongst staff at FCI La Tuna, but no cases among prisoners. Bureau of Prisons, COVID-19 update, https://www.bop.gov/coronavirus/ (last visited Jun. 9, 2022).

The Government contests whether Mr. Chinji's medical conditions actually put him at a higher risk of complications due to COVID-19. Gov't Resp. 13. He has had COVID-19 on four separate occasions, the most recent of which was asymptomatic. *Id.* at 14. Furthermore, he declined the COVID-19 vaccine, stating that he wanted Moderna and not J&J. *See* Gov't Resp. Ex. 4. He routinely refuses other forms of testing as well. Gov't Resp. 14.

The Fourth Circuit has noted that "COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal." *High*, 997 F.3d at 185. Thus, a petitioner can present an extraordinary and compelling reason related to COVID-19. *Id.* The district courts have discretion to determine how to resolve such motions. *Id.* Judges in this Court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where defendants have serious medical problems that placed them at high risk for complications if they contracted COVID-19. *See, e.g.*, *United States v. Jennings*, No. 13-cr-46-PWG, 2020 WL 4748462, at *4 (D.

---

[5] Neutropenia is an abnormally low white blood cell count that can create a higher risk of infection. *Neutropenia*, Cleveland Clinic (May 27, 2022), https://my.clevelandclinic.org/health/diseases/21058-neutropenia (last visited Jun. 13, 2022).

[6] Epistaxis is the scientific term for a nosebleed. *Nosebleed (Epistaxis)*, Cleveland Clinic (Oct. 23, 2019), https://my.clevelandclinic.org/health/diseases/13464-nosebleed-epistaxis (last visited Jun. 13, 2022).

Md. Aug. 17, 2020) (citing cases in this Court and other courts, and the application to multiple serious conditions); *but see United States v. Taylor*, No. 17-cr-0268-PWG, 2020 WL 6322620 (D. Md. Oct. 28, 2020), *appeal dismissed*, No. 20-7632, 2021 WL 1784092 (4th Cir. Jan. 13, 2021) (finding that hypertension and high BMI were not sufficient to warrant prisoner's release when the spread of coronavirus in his BOP facility was under control, and prisoner did not show that he would not receive appropriate treatment at his BOP facility, or a nearby medical facility if he were to contract the virus).

Additionally, the judges of this Court have dealt with increased rates of COVID-19 inoculation differently. *Compare United States v. Gregory*, No. CR SAG-13-0034, 2021 WL 1909605, at *5 (D. Md. May 12, 2021) (concluding that the petitioner's COVID-19 vaccination removed his pulmonary-related conditions from the category of risk constituting an "extraordinary and compelling reason"), *and United States of America v. Dion Alexander, Defendant.*, No. CR RDB-16-364, 2021 WL 2661395, at *3 (D. Md. June 29, 2021) (taking into account falling COVID-19 infection figures and rising vaccinations when denying that petitioner had "extraordinary and compelling" reasons for release), *with United States v. Spriggs*, No. CR CCB-10-354, 2021 WL 1856667, at *3 (D. Md. May 10, 2021) (finding that petitioner's receipt of one vaccination shot did not greatly decrease the court's concern regarding his vulnerability to COVID-19 when he had underlying medical conditions and there are new variants of COVID-19). Therefore, this Court does take vaccination status into account when evaluating a motion for compassionate release.

There is little doubt that COVID-19 poses a higher risk to individuals with serious medical conditions, and that inmates possess the unique problem of being in close quarters with each other. Mr. Chinji, however, has presented little evidence that his medical conditions actually increase his

susceptibility to COVID-19. As mentioned by the Government, his last case of COVID-19 was asymptomatic, Gov't Resp. 14, and there is nothing to suggest that his medical conditions will lead to a more serious case of the virus if he were to contract it again. Moreover, by refusing the vaccine, Mr. Chinji has actively refused an opportunity to reduce his risk of contracting COVID-19. *See id.* Lastly, there are currently no cases of COVID-19 among prisoners at FCI La Tuna. These considerations indicate that Mr. Chinji has not raised an "extraordinary" or "compelling" reason for compassionate release.

These concerns are further considered in the analysis of the sentencing factors.

### III. Sentencing Factors

A finding of "compelling and extraordinary reasons" is a necessary but not sufficient condition for compassionate release. This Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a).

When a crime seriously harms innocent victims, this factor will weigh heavily against a finding of compassionate release. *See United States v. Ogundele*, No. 15-cr-277-PWG, 2021 WL 1541660, at *5 (D. Md. Apr. 20, 2021). Mr. Chinji, along with a co-conspirator, defrauded victims out of almost one million dollars, which severely affected their finances. *See* Gov't Resp. 15. One victim was an immigrant from Afghanistan who lost $458,500, which was 90% of the money he had saved up for his business. *Id.* It should be noted, however, that when a defendant was not a

8

leader of a conspiracy, the nature and circumstances of the offense are less serious. *See Ogundele*, 2021 WL 1541660, at *5. Although Mr. Chinji was indeed only one part of a larger fraudulent scheme, all money from the scheme was recovered except for $1,160,000, the majority of which was the money laundered by Mr. Chinji. Gov't Resp. 4. As such, the nature and circumstances of the offense demonstrate that his 46-month sentence is sufficient but not greater than necessary.

Moreover, Mr. Chinji's sentence was needed to deter future criminal conduct and reduce the risk that he would commit similar crimes again. *See United States v. Coleman*, No. 17-cr-393-PWG, 2022 WL 356724, at *4 (D. Md. Feb. 7, 2022). Even if he were to be allowed to serve the rest of his sentence at home, he could still participate in the same fraudulent behavior by defrauding victims over email. *See id.* His sentence was imposed even in consideration of his medical conditions due to the seriousness of his crime and the possibility of future criminal acts. Compassionate release now would undermine the need for his sentence in light of the seriousness of his offense and the threat of recommittal.

Considering all of the circumstances, I find that granting release at this time would be inconsistent with the sentencing factors set forth in § 3553(a), including the nature and circumstances of the offense as well as the need for the sentence imposed.

## CONCLUSION

The Court recognizes the seriousness of the COVID-19 pandemic and the risks that Mr. Chinji faces based on his medical conditions. Due to the lack of extraordinary or compelling reason and the seriousness of his offense, however, I am not convinced that compassionate release is warranted. Therefore, Mr. Chinji's motion for compassionate release is denied.

**ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is this 21st day of June 2022, hereby ORDERED that Defendant's Motion for Compassionate Release, ECF No. 120, is DENIED.

                                                             /S/
                                         Paul W. Grimm
                                         United States District Judge